John Tehranian (Bar No. 211616)
E-mail: jtehranian@onellp.com
Nima Kamali (Bar No. 294401)
E-mail: nkamali@onellp.com
**ONE LLP**
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, California 92660
Telephone:   (949) 502-2870
Facsimile:   (949) 258-5081

Attorneys for Plaintiffs,
Leo J. Keeler and Dorothy A. Keeler

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEO J. KEELER and DOROTHY A. KEELER,<br><br>Plaintiffs,<br><br>v.<br><br>BACKCOUNTRY.COM, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiffs Leo J. Keeler and Dorothy A. Keeler ("Plaintiffs"), by and through their attorneys of record, complain against Backcountry.com, Inc. ("Backcountry") and DOES 1 through 10 (collectively, "Defendants") as follows:

## JURISDICTION AND VENUE

1. This is a civil action against Defendants for their acts of copyright infringement in violation of the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.* This Court has subject matter jurisdiction over the copyright infringement under 28 U.S.C. § 1331, 17 U.S.C. § 501(a), and 28 U.S.C. § 1338(a).

2. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(a) in that Defendants may be found and transact business in this Judicial District. Defendants are subject to the general and specific personal jurisdiction of this Court because of their contacts with the State of California.

## PARTIES

3. Plaintiffs Leo J. Keeler and Dorothy A. Keeler are a married couple renowned for their work together as professional wildlife photographers. They are the authors and owners of the copyright to the photograph at issue herein.

4. Plaintiffs are informed and believe and, upon such, allege that Defendant Backcountry is a Utah corporation with headquarters in Park City, Utah, and offices in other cities located in the U.S. and internationally. Amongst other things, Defendant Backcountry, with its commercial website that lies at the most interactive end of the *Zippo* spectrum in terms of its overall design, use, and functionality, has engaged in direct, contributory, vicarious, and/or otherwise induced copyright infringement in this judicial district. On its website, Backcountry sells "the highest-performance outdoor gear as well as clothing," and it ships its sold merchandise not only across the country, but also worldwide. Upon information and belief, Defendants have engaged in continuous and systematic business with California residents and, upon information and belief, derive substantial revenues from commercial activities in and/or related to California. Backcountry also operates a number of other equally commercial sites, including

1  www.competitivecyclist.com, www.dogfunk.com, www.motosport.com,
2  www.bergfreunde.de, www.steepandcheap.com, www.chainlove.com, and
3  www.whiskeymilitia.com.  Backcountry is the sole owner and operator of the Internet
4  website located at http://backcountry.com.  On that website, Backcountry states its vision:
5  "to provide the best outdoor gear—and to be the best at doing it."

6  5.  DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue
7  said Defendants by such fictitious names.  Plaintiffs will ask leave of Court to amend this
8  Complaint and insert the true names and capacities of said Defendants when the same have
9  been ascertained.  Plaintiffs are informed and believe and, upon such, allege that each of
10  the Defendants designated herein as a "DOE" is legally responsible in some manner for the
11  events and happenings herein alleged, and that Plaintiffs' damages as alleged herein were
12  proximately caused by such Defendants.

13  **STATEMENT OF FACTS**

14  **A.  *The Photo at Issue in This Dispute***

15  6.  Leo J. Keeler and his wife Dorothy A. Keeler are professional wildlife
16  photographers with tremendously impressive resumes.  In fact, they have made such a
17  name for themselves that their work was featured in a national advertisement campaign that
18  was published in *National Geographic*, *New York Times*, *Washington Post*, *Wall Street*
19  *Journal*, *Newsweek*, *Sports Illustrated*, and a number of other major publications.
20  Together, they have served as wildlife consultants for several filmmakers, and they have
21  been featured on programs produced by the likes of ESPN, BBC, and the Travel Channel.
22  The Keelers' passion for their work extends to the subjects of their photography, as they
23  have played an instrumental role in non-profit endeavors to protect vulnerable wildlife.
24  7.  The accolades that the Keelers have received for their artistically and ethically
25  commendable work are many.  In February 2000, they received the Ginny Hill Wood
26  Award from the Alaska Wilderness Recreation & Tourism Association.  In June 2003, they
27  received the Daniel Housberg Wilderness Image Award for Excellence in Still Photography
28  from the Alaska Conservation Foundation.  Perhaps most near to the Keelers' hearts,

however, is the October 2005 honor they received in being selected as two of the forty founding members of the International League of Conservation Photographers. The forty founding members are known as some of our generation's most renowned wildlife photographers, and the Keelers earned their place among such greats.

8. Included in the Keelers' vast collection of wildlife images is the breathtaking photograph at issue in this matter ("the Photo"), which depicts a grizzly bear majestically walking before Mount McKinley in Denali National Park. Mount McKinley is the tallest mountain peak in all of North America and one of the largest tourist attractions in Alaska. Moreover, Mount McKinley is the most recognizable symbol of Alaska, and the grizzly bear is a primary symbol of Alaskan wildlife. The Photo is indisputably stunning, due in large part to the perfect timing with which the Keelers captured the surreal image. Not only have they photographed both the moving bear and the sleeping mountain in perfect focus, but they have also captured the image on an unusually clear day and under perfect conditions. (Clouds usually obscure Mount McKinley.) The Keelers are the authors and copyright holders to the Photo, which was registered with the United States Copyright Office on September 19, 1997. The Photo is attached hereto as **Exhibit A**.

9. At one point in time, the Keelers sold copies of their photographs to gift shops in Alaska, and this Photo was indeed one of their bestsellers. Many businesses have received licenses to use the Photo to convey the essence of Alaska, including the immensely successful Holland America Line cruise line. Attached hereto as **Exhibit B** are true and correct copies of Holland America Line's lawful use of the Photo.

**B.**   *The Defendants and their Infringement*

10. Plaintiffs are informed and believe and, upon such, allege that, under the names "Backcountry" and "Backcountry.com," Defendant Backcountry owns and operates a commercial, interactive website located at http://backcountry.com ("the Website") that provides, markets, and sells "the highest-performance outdoor gear as well as clothing and expert-level gear knowledge."

11. As Backcountry notes, "[Backcountry.com] is the store that serves as the namesake to the Backcountry family." The "family," of course, consists of numerous additional commercial websites that also sell outdoor gear and clothing, usually to niche markets. In creating this network of sites, Backcountry has permeated deeply into the market for outdoor gear and clothing. In a December 2013 press release that described Backcountry as "the established e-commerce leader in the outdoor, action sports, bike, and power sports markets," Backcountry CEO Jill Layfield touted that Backcountry's partnership with newly acquired Bergfreunde.de—"the leading e-commerce company for outdoor enthusiasts in Germany, Austria, and Switzerland"—"signifies the first step toward building the first globally scaled outdoor e-commerce business."

12. Backcountry has reached even greater levels of success in recent months and makes its firm grasp on the outdoor gear and clothing industry no secret. In a March 2014 press release, Backcountry wrote the following: "Continuing to enhance and amplify its leadership in the industry, the premier online retailer of premium outdoor gear welcomes the creative entrepreneur Bradford Shellhammer to the family as Chief Design Officer." As the press release goes on to provide, "Shellhammer has been named one of the '100 Most Creative People in Business' by Fast Company, coined the 'King of Quirk' by Forbes, and the 'Eames of E-Commerce' by USA Today." Further demonstrating Backcountry's great success, Backcountry recently announced that it would be sponsoring a professional mountain bike team for the first time.

13. On the Website, Backcountry provides that "[a]ll content included on the website . . . is the property of Backcountry or its suppliers and protected by United States and international copyright laws." Despite this statement and the most basic understanding of copyright law that one would reasonably attribute to a company of Backcountry's great fame and success, Defendants have—on information and belief—violated federal law by willfully infringing Plaintiffs' copyright.

14. On November 26, 2013, Ms. Liz Kuz—Senior Art Director of Backcountry.com—wrote a post on the webpage where Backcountry markets and sells the

North Face Denali Windpro Fleece Jacket for Men (the "North Face Jacket"). In her post, Ms. Kuz prominently featured the Photo by reproducing, distributing, and publicly displaying the Photo without authorization of or payment to the Keelers in direct association with the North Face Jacket and in order to promote further sales of said Jacket. However, Ms. Kuz's improper actions did not end there. To make matters worse, the Photo was modified in the most crass and commercial of ways: to sell product. Instead of being alone in nature's majesty, the bear in Backcountry's infringing use of the Photo was seen interacting with a North Face Denali Windro Fleece jacket—the very jacket for sale on that webpage. (Mount McKinley—the peak featured in the Photo—is also known as "Denali" and is located in Denali National Park.) Backcountry therefore altered and exploited the Photo for a specific and commercial purpose. When a user clicked the photograph, the photograph appeared yet again, this time in an even larger size in a new window on Backcountry.com. The altered photograph also appeared in a third and more prominent place on the Website: at the *top* of the page of the aforementioned jacket. Defendants therefore prominently reproduced, distributed, and publicly displayed the Photo on the Website without permission, consent, or license from Plaintiffs, the rights holders to the Photo.

15. In the marketplace, photographs of wildlife can carry tremendous monetary value. Plaintiffs license their photographs to those desiring to use their stunning and surreal shots of wildlife, but not without reasonable payment for the use thereof. On each of the photos listed on Plaintiffs' website—including, of course, the Photo—Plaintiffs include a large and prominent watermark of the Copyright symbol. Moreover, at the bottom of the Photo's page is the following: "© Leo & Dorothy Keeler." Unfortunately, Defendants ignored these clear notices and their actions irreparably harmed the Photo's value.

16. On information and belief, Defendants have driven massive traffic to the Website in large part due to the presence of captivating wildlife photographs that naturally complement Backcountry's business as a leader in outdoor gear and clothing. This traffic

translates into Defendants' significant ill-gotten commercial advantage and revenue generation derived directly from their infringing actions.

17. Unfortunately, Defendants have neglected to pay as much attention to their use of intellectual property as they have to their ambitions to expand their business worldwide. Perhaps Defendants perceive this disregard for the law as a small price to pay in an otherwise admittedly successful campaign to dominate their target market. Regardless, the fact remains that Defendants used Plaintiffs' intellectual property without payment or permission, and Backcountry is all too aware that such actions have legal consequences.

## FIRST CLAIM FOR RELIEF

## (Copyright Infringement, 17 U.S.C. § 501)

18. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 15 above, as though fully set forth herein.

19. Plaintiffs are the owners of the copyright to the Photo, which substantially consists of material wholly original with Plaintiffs and which constitutes copyright subject matter under the laws of the United States. Plaintiffs have complied in all respects with the Copyright Act and all of the laws of the United States governing copyrights. The Photo has been timely registered with the United States Copyright Office. Attached hereto as **Exhibit C** is a true and correct copy of the Photo's registration page on the Copyright Office website.

20. Defendants have directly, vicariously and/or contributorily infringed, and unless enjoined, on information and belief, will again infringe Plaintiffs' copyright by reproducing, displaying, distributing, and utilizing Plaintiffs' copyrighted photograph for purposes of trade in violation of 17 U.S.C. § 501 *et seq*. Attached hereto as **Exhibit D** are true and correct copies of Defendants' acts of infringement.

21. Defendants have willfully infringed, and unless enjoined, on information and belief, will again infringe Plaintiffs' copyright by knowingly reproducing, displaying, distributing, and utilizing Plaintiffs' copyrighted photograph for purposes of trade.

22. These acts of infringement are willful because, *inter alia*, Defendants are

sophisticated and have full knowledge of the strictures of federal copyright law and the basic requirements for licensing the use of copyrighted content for commercial exploitation. Defendant Backcountry's nature as a self-proclaimed leader in the industry strongly suggests familiarity with at least the most basic parameters of copyright law.

23. The willfulness of Defendants' infringement is also evidenced by a number of additional factors. First, Defendants used the Photo not once or twice, but at least *three* times on Backcountry.com, suggesting reckless disregard as to the copyrighted nature of the Photo. Second, the fact that Backcountry.com's Senior Art Director committed at least one of these infringing acts amplifies such recklessness, seeing as an art specialist would undoubtedly be familiar with the most basic strictures of copyright law. Third (and perhaps most importantly), Defendants continued to infringe Plaintiffs' copyright *even after* Plaintiffs notified Backcountry of its infringing acts on or about March 13, 2014. In response to a cease-and-desist letter sent by Plaintiffs' counsel, Backcountry's counsel wrote that "Backcountry.com . . . has removed all uses of the Accused Photo from its website pending our investigation." On April 8, 2014, opposing counsel again noted in an e-mail that "the accused photograph has already long since been removed from my client's website, as previously indicated." Despite these allegedly sincere assurances, three copies of the Photo still remained live on the Website on April 8, 2014. Plaintiffs' counsel realized this fact and notified opposing counsel accordingly the very next day. Therefore, Defendants were not only reckless, but they were in fact *aware* of their infringing activity and continued to infringe nonetheless (and willfully misrepresent that they had supposedly removed the Photo), rendering a finding of willfulness indisputable. Attached hereto as **Exhibit E** are true and correct copies of screenshots confirming these acts of continued, willful infringement.

24. Defendants, despite such copyright notice and terms of use, reproduced, publicly distributed, and publicly displayed the Photo on the Website.

25. Defendants have received substantial benefits in connection with the unauthorized reproduction, display, distribution, and utilization of the Photo for purposes of

trade, including increasing the traffic to the Website and, thus, increasing merchandise sales and advertising fees realized.

26. The actions of Defendants were performed without Plaintiffs' permission, license, or consent.

27. The wrongful acts of Defendants have caused great injury to Plaintiffs, of which damages cannot be accurately computed, and unless this Court restrains Defendants from further commission of said acts, Plaintiffs will suffer irreparable injury, for all of which they are without an adequate remedy at law. Accordingly, Plaintiffs seek an order under 17 U.S.C. § 502 enjoining Defendants from any further infringement of Plaintiffs' copyrighted works.

28. As a result of the acts of Defendants alleged herein, Plaintiffs have suffered substantial damage to their business in the form of diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of their rights, all of which are not yet fully ascertainable.

29. Because of the brazenly willful nature of the copyright infringement, Plaintiffs are entitled to an award of statutory damages equal to $150,000 per act of infringement.

30. Alternatively, at Plaintiffs' discretion, Plaintiffs are entitled to actual damages in an amount to be proven at trial.

31. Plaintiffs are also entitled to costs and attorney's fees in prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1. that Defendants, their officers, agents, servants, employees, representatives, and attorneys, and all persons in active concert or participation with them, be permanently enjoined from designing, copying, reproducing, displaying, promoting, advertising, distributing, or selling, or any other form of dealing or transaction in, any and all advertising and promotional materials, print media, signs, Internet websites, or any other media, either now known or hereafter devised, bearing any design or mark which infringe,

contributorily infringe, or vicariously infringe upon Plaintiffs' rights in Plaintiffs' copyrighted works;

2. that Defendants be held liable to Plaintiffs in statutory damages for copyright infringement, including willful infringement, in accordance with 17 U.S.C. §§ 504(a)(2) & (c);

3. for an accounting for all profits, income, receipts or other benefit derived by Defendants from the reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringes upon Plaintiffs' copyright pursuant to 17 U.S.C. §§ 504 (a)(1) & (b);

4. for an order requiring Defendants to account for and pay over to Plaintiffs all profits derived by Defendants from their acts of copyright infringement and to reimburse Plaintiffs for all damages suffered by Plaintiffs by reason of Defendants' acts, pursuant to 17 U.S.C. §§ 504 (a)(1) & (b);

5. for actual damages for copyright infringement pursuant to 17 U.S.C. §§ 504 (a)(1) & (b);

6. for reasonable attorney's fees incurred herein pursuant to 17 U.S.C. § 505;

7. for costs and interest pursuant to 17 U.S.C. §§ 504 (a)(1) & (b); and

8. for any such other and further relief as the Court may deem just and appropriate.

Dated: May 1, 2014

**ONE LLP**

By: /s/ Nima Kamali
    Nima Kamali
    Attorneys for Plaintiffs, Leo J. Keeler and Dorothy A. Keeler

**COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all issues so triable under the law.

Dated: May 1, 2014  **ONE LLP**

By: /s/ Nima Kamali
Nima Kamali
Attorneys for Plaintiffs, Leo J. Keeler and Dorothy A. Keeler